# In the United States Court of Federal Claims

No. 21-2181 L
Filed: October 31, 2024

DEBORAH E. BARRON and JOHN BUENAVENTURA BAEZ, *et al.*,

*Plaintiffs*,

v.

THE UNITED STATES,

*Defendant*.

*Mark Fernlund Hearne, II*, True North Law LLC, St. Louis, MO, for Plaintiffs.

*Christopher Michael Chellis*, Trial Attorney, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., *with whom were Michael K. Robertson*, Trial Attorney, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C. *and Todd Kim*, Assistant Attorney General, United States Department of Justice, Environment & Natural Resources Division.

**OPINION AND ORDER**

This rails-to-trails case requires the court to construe the terms of certain deeds and a condemnation decree under Florida law to determine what estate was transferred to the railroads. Under Florida law, the grantor's intent as shown on the face of a deed controls. And although Florida law is not as clear on the interpretation of a condemnation decree, Florida courts instruct that this court should interpret the decree by its plain terms. In this case, these principles lead the court to conclude that the disputed deeds[1] and condemnation decree conveyed fee simple title to the property at issue to the railroads. Therefore, the court grants the Government's motion for partial summary judgment.

## I. Background

On March 8, 2019, Seminole Gulf Railway, L.P. ("SGR") filed a verified notice of exemption to abandon an approximately 7.68-mile segment of its rail line known as the Venice Branch. ECF No. 18-1 at 62 (Exhibit 7). The Venice Branch "extends between milepost SW

[1] As explained below, the Government does not contest that the Honore conveyance applicable to a few plaintiffs conveyed only an easement that was not broad enough to include trail use. The court does not consider it a disputed conveyance.

890.29 on the north side of Ashton Road and milepost SW 884.70, and between milepost AZA 930.30 and milepost AZA 928.21 on the north side of State Highway 780"—it partly lies "within the City of Sarasota, Sarasota County, Fla., with the remainder lying within unincorporated Sarasota County." *Id.* On May 14, 2019, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") concerning the Venice Branch, invoking Section 8(d) of the Trails Act. *Id.* at 62-66.

Most of the Plaintiffs have predecessors-in-interest who conveyed an interest in the land underlying the Venice Branch to the Seaboard Air Line Railway or the Florida West Shore Railway by means of the Honore, Sarasota Land Company, Clough, Burton, or Neihardt deeds. ECF No. 19 (Joint Title Stipulations).[2]  The parties dispute whether the interests conveyed by these deeds transferred a fee simple interest to the railroad, thereby extinguishing any property interest to the underlying land, or merely an easement, in which case Plaintiffs allege they are entitled to compensation for a taking of their property.  One railroad also acquired an interest in the land by means of a U.S. District Court condemnation judgment.  ECF No. 18, ¶¶ 105-09; ECF No. 19; ECF No. 31-9 (Exhibit 7) (Condemnation Judgment).  The parties dispute whether the judgment granted the railroad fee simple title or merely an easement.

## II.    Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rules of the Court of Federal Claims ("RCFC") 56(a).  The movant has the initial burden to show that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A "genuine" dispute of material fact exists where a reasonable jury "could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a "material" fact is one "that might affect the outcome of the suit under the governing law," as opposed to "disputes that are irrelevant or unnecessary."  *Id.*

If the movant meets its initial burden, the burden shifts to the nonmovant to show a genuine dispute of a material fact.  *Id.* at 256-57.  The nonmovant can do this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  RCFC 56(c)(1).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).  And while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor[,]" *id.* at 255, the nonmovant's evidence must be "significantly probative" and more than "merely colorable" to defeat summary judgment, *id.* at 249-50.

---

[2] All the railroads' interest passed to successors and eventually to CSX Transportation, Inc.  ECF No. 18 ¶ 13.  Because the specific railroad to which the original conveyances were made is generally not material to the outcome of this case, the court refers to "the railroad" unless the specific railroad is important to the resolution of an argument.

## III.    Discussion

### A.    Rails-to-Trails Takings Actions

The Trails Act was created "to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." *Rogers v. United States* (*Rogers I*), 90 Fed. Cl. 418, 427 (2009) (citing *Preseault v. Interstate Com. Comm'n* (*Preseault I*), 494 U.S. 1, 5 (1990)); *see also* 16 U.S.C. § 1241 *et seq*. "[F]or a railroad right-of-way to be converted into a recreational trail, the railroad must either (1) file a standard abandonment application with the STB or (2) seek an exemption from filing the application." *Mills v. United States*, 147 Fed. Cl. 339, 344 (2020) (citing *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004)). If the standard abandonment application is approved or the exemption is granted, "the railroad ceases operation, the STB relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect." *Id.* (citing *Caldwell*, 391 F.3d at 1228-29).

"The Trails Act, through a process known as 'railbanking,' provides an alternative to abandoning a railroad right-of-way . . . ." *Caldwell*, 391 F.3d at 1229. Railbanking "allows a railroad to negotiate with a state, municipality, or private group (the 'trail operator') to assume . . . responsibility for operating the railroad right-of-way as a recreational trail." *Id.* (citing *Preseault I*, 494 U.S. at 6-7). And "[i]f the railroad and trail operator are willing to negotiate a trail use agreement, the STB stays the abandonment and issues a NITU, allowing the railroad right-of-way to be 'railbanked'"—the NITU "operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." *Mills*, 147 Fed. Cl. at 344 (internal quotation marks omitted) (quoting *Caldwell*, 391 F.3d at 1229-34). Thus, in a rails-to-trails takings claim, "the issuance of the original NITU triggers the accrual of the cause of action." *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006).

"The operation of the Trails Act is subject to the Fifth Amendment" so "when private property interests are taken by the Government pursuant to the Trails Act, the property owners are entitled to just compensation." *Rogers I*, 90 Fed. Cl. at 427 (citing *Preseault I*, 494 U.S. at 13); U.S. Const. amend. V. A takings question arises "in the typical rails-to-trails case because many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests." *Preseault I*, 494 U.S. at 8. Thus, a "taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." *Caldwell*, 391 F.3d at 1228. That means there is a taking "if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail." *Id.* at 1229. But "[i]f the railroad owns the underlying right-of-way in fee simple at the time of the alleged taking[,]" there is no taking of any property interests because the railroad, not the adjacent landowners, owns the full bundle of property rights. *See Mills v. United States*, 147 at 344. It is therefore necessary to determine who owned which property interests on the date of the taking because "[i]n a takings case, 'only persons with a valid property interest at the time of the taking are entitled to compensation.'" *Id.* (quoting *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001)). Thus, "another party cannot be owed just compensation for the taking of that land." *Id.* (internal quotation marks omitted) (quoting *Whispell Foreign Cars, Inc. v. United States*, 97 Fed. Cl. 324, 330 (2011)).

### B.    The NITU

The STB issued the NITU in this case on May 14, 2019. Therefore, the court must "determine whether the landowners had property interests in the right-of-way and whether the Government's actions constituted a taking of those interests." *Id*. To do this, the court must resolve three questions:

> (1) who owned the strips of land involved, specifically did the [r]ailroad . . . acquire only easements, or . . . fee simple estates;
>
> (2) if the [r]ailroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and
>
> (3) even if the grants of the [r]ailroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Mills*, 147 Fed. Cl. at 344 (quoting *Preseault v. United States* (*Preseault II*), 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc)). The parties have stipulated that the Plaintiff landowners were the owners of the parcels at issue on the date of the NITU. ECF No. 19 at 1. "As such, these named landowners have cleared a preliminary hurdle in pursuit of their takings claims; they owned land adjacent to the railway when the taking allegedly occurred." *Rogers I*, 90 Fed. Cl. at 428. Thus, the court only considers the second and third prongs of the *Presault II* analysis.

### C. Principles of Deed Construction under Florida Law

In rails-to-trails cases, this court "analyze[s] the property rights of the parties . . . under the relevant state law." *Rogers v. United States* (*Rogers IV*), 814 F.3d 1299, 1305 (Fed. Cir. 2015) (citing *Preseault II*, 100 F.3d at 1543). Given that the property in this case is in Florida, the court applies Florida law when analyzing the property rights. "Under Florida law, 'the intention of the parties . . . governs the interpretation of a document.'" *Rogers v. United States* (*Rogers III*), 107 Fed. Cl. 387, 393 (2012) (quoting *Thrasher v. Arida*, 858 So. 2d 1173, 1175 (Fla. Dist. Ct. App. 2003)). As the Florida Supreme Court explained in response to a certified question from the Federal Circuit: "The effect of a deed, both as to the property conveyed and the character of the estate conveyed, is determined by the intent of the grantor." *Rogers v. United States* (*Rogers V*), 184 So. 3d 1087, 1095 (Fla. 2015). Courts "should 'consider the language of the entire instrument in order to discover the intent of the grantor, both as to the character of [the] estate and the property attempted to be conveyed, and to so construe the instrument as, if possible, to effectuate such intent.'" *Rogers III*, 107 Fed. Cl. at 393 (quoting *Reid v. Barry*, 112 So. 846, 852 (Fla. 1927)); *see also Ivey v. Peacock*, 47 So. 481, 481 (Fla. 1908) ("The general rule of construction obtaining here as elsewhere that all parts of an instrument will be looked to, and that construction adopted that carries out most clearly the evident intent of the parties" shall be adopted.). And "[i]f there is no ambiguity in the language employed then the intention of the grantor must be ascertained from that language." *Saltzman v. Ahern*, 306 So. 2d 537, 539 (Fla. Dist. Ct. App. 1975).

Florida also presumes that the grantor intended to convey his or her entire estate unless there is clear language to the contrary:

> Where any real estate has heretofore been conveyed or granted or shall hereafter be conveyed or granted without there being used in the said deed or conveyance or grant any words of limitation . . . such conveyance or grant, whether heretofore made or hereafter made, *shall be construed to vest the fee simple title or other whole estate or interest which the grantor had power to dispose of at that time in the real estate conveyed or granted*, unless a contrary intention shall appear in the deed, conveyance or grant.

Fla. Stat. § 689.10 (emphasis added).[3] The result of this statute is that "a deed is presumed to convey fee simple title, or whatever title the grantor had power to convey, unless a contrary intention is shown by the language of the deed." *Rogers V*, 184 So. 3d at 1095 n.5.

"No stock words or phrases are required" to indicate what estate and property the grantor intends to convey; rather, "it is only necessary that such words be employed as will show the grantor's intent." *Seaboard Air Line Ry. Co. v. Dorsey*, 149 So. 759, 761 (Fla. 1932). That said, there are numerous cases that provide guidance on discerning the intent of a grantor under Florida law. For example, an expansive granting clause that lacks any restrictive or limiting clauses indicates the grantor intended to convey a parcel in fee simple. *Rogers v. United States* (*Rogers II*), 93 Fed. Cl. 607, 619 (2010), *aff'd*, 814 F.3d 1299 (Fed. Cir. 2015). In *Rogers II*, the court concluded that "[b]ecause [the original landowner] held the lands in fee simple and transferred 'all of its right, title and interest' to Seaboard [the railroad], it conveyed fee simple title. The granting clause does not contain language limiting the interests conveyed to certain uses or purposes, nor does it reference an easement." *Id.* And the court explained that "[t]his unambiguous language is in stark contrast to the Honore conveyance . . . in which the grantor

---

[3] Florida adopted the predecessor of this statute in 1903, at which time it provided:

> Where any real estate shall hereafter be conveyed or granted without there being used in the conveyance or grant any words or limitation, such as heirs or successors, or similar words, such conveyance or grant shall be construed to pass the fee simple or other whole estate or interest which the grantor had power to dispose of in the real estate conveyed or granted, unless a contrary intention shall appear in the conveyance or grant.

*Reid*, 112 So. at 860-61 (quoting 1903 Fla. Laws ch. 5145, § 1). In 1925, Florida made the statute retroactive—i.e. applicable to conveyances made prior to the enactment of the 1903 statute. *Rogers V*, 184 So.3d at 1095 n.5. Because all the conveyances at issue in this case were made after 1903, the 1925 change to the law does not impact Plaintiffs' rights. *See* ECF No. 31-5 (Sarasota Land Co. deed executed in 1910); ECF No. 31-6 (Burton deed executed in 1910); ECF No. 31-7 (Clough deed executed in 1910); ECF No. 31-8 (Neihardt deed executed in 1905). Therefore, the court applies the current version of Fla. Stat. § 689.10, as the parties do, and the Florida Supreme Court did in *Rogers V*.

transferred to Seaboard an easement, described as 'a right of way for railroad purposes over and across the following described parcels of land.'" *Id.* (citing *Rogers I*, 90 Fed. Cl. at 429); *see also Andrews v. United States*, 147 Fed. Cl. 519, 526 (2020), *aff'd*, 844 F. App'x 351 (Fed. Cir. 2021); *Whispell Foreign Cars, Inc.*, 97 Fed. Cl. at 335 *amended on reconsideration in part*, 100 Fed. Cl. 529 (2011).

Similarly, a granting clause with a reversionary clause or restrictive language limiting the use of the property indicates the grantor intended to convey only an easement. *Rogers I*, 90 Fed. Cl. at 430-31; *Rogers III*, 107 Fed. Cl. at 394-99; *Whispell Foreign Cars, Inc.*, 97 Fed. Cl. at 335-36. A description of the interest conveyed as a 'right of way,' however, "can refer either to a 'right of crossing'—an easement—or to 'a strip of land which a railroad takes, upon which to construct its railroad'—an estate in fee." *Rogers II*, 93 Fed. Cl. at 623. Thus, when an interest is conveyed as a "right of way," "[w]hether the railroad obtains a 'right' or 'land' depends on the intent of the parties as reflected by the deed of conveyance." *Id.*; *see also Rogers V*, 184 So. 3d at 1094-95.

Additionally, an instrument describing the interest conveyed as "land" weighs in favor of interpreting the conveyance as granting fee simple. *Rogers II*, 93 Fed. Cl. at 619 ("[T]he descriptions of the three conveyed parcels reference a 'strip of land,' and two 'tract[s] of land.' . . . . This is further indication that the parties intended to convey land, rather than a right to use or control land for a limited purpose.") (citation omitted); *Andrews*, 147 Fed. Cl. at 526 ("The deed refers to a parcel of land, not a right of way."). Covenants warranting title in an instrument also factor in favor of interpreting the instrument as conveying fee simple. *Rogers II*, 93 Fed. Cl. at 619-20. And under Florida law, "the amount of consideration does not inform the interpretation of the deeds . . . ." *Id.* at 624 (cleaned up); *Rogers V*, 184 So. 3d at 1097 ("The law of Florida . . . is that the amount of consideration stated in a deed provides no basis for questioning the validity of the deed. The language of the deed determines the nature of the estate conveyed.") (cleaned up); *Venice E., Inc. v. Manno*, 186 So. 2d 71, 75 (Fla. Dist. Ct. App. 1966) ("[W]e cannot inquire into the adequacy of the consideration given for the disputed conveyances. It is fundamental that the law will not consider the adequacy or the sufficiency of the consideration given for a conveyance or transaction.").

And, of course, the Florida Supreme Court has also addressed Florida law in the context of rails-to-trails litigation in *Rogers V*. Plaintiffs argue, however, that *Rogers V* cannot be read broadly to apply to this case for three reasons. ECF No. 39 at 27. First, Plaintiffs claim the certified question in *Rogers* "assumed the deeds . . . granted a fee simple estate and premised its answer on this assumed predicate. The Court in *Rogers* did not engage in deed construction, rather the Court assumed the grantor intended to convey fee title." *Id.* at 25-26. While the certified question from the Federal Circuit assumed the deeds transferred fee simple title, the Florida Supreme Court did *not* assume that the deeds in *Rogers* granted fee simple at all:

> We need not discuss the language of the deeds in this case in detail . . . because the Court of Federal Claims did a thorough job of it in reaching the conclusion that the deeds by their language appeared to convey fee simple title. The deeds in question in this case included all the formal statements needed to show that the land was purchased and that the deeds granted fee simple title.

*Rogers V*, 184 So. 3d at 1095. Further, "the deeds were clear in their language and conveyed fee simple title." *Id*. at 1097. The Florida Supreme Court thus *agreed with* Judge Williams that the deeds at issue unambiguously conveyed fee simple title; it did not assume that the deeds conveyed fee simple. In addition to Judge Williams and the Florida Supreme Court, the Federal Circuit also found the deeds in *Rogers* unequivocally conveyed land to the railroad in fee simple: "While the Appellants dispute whether the deeds appear on their face to transfer a fee simple interest in the properties at issue, like the Court of Federal Claims before us, we conclude that they do." *Rogers IV*, 814 F.3d at 1308 (citation omitted). Thus, this court adheres to Judge Williams's application of Florida law in construing deeds, which the Federal Circuit and the Florida Supreme Court agreed with too.

Second, Plaintiffs argue that "[t]he government's overbroad reading of the Florida Supreme Court's decision in *Rogers*" redefines "the property interest in land subject to railroad rights-of-way as a fee estate and not an easement." ECF No. 39 at 27. Under this reading, *Rogers V* is "a new declaration of the law defining established property interests originally established in the early 1900s" and "violates *Stop the Beach Renourishment v. Florida Dept. of Env. Protection*, 560 U.S. 702 (2010), in which the Supreme Court prohibited Florida Courts from redefining property interests." *Id.* at 26.[4] But *Rogers V* did not redefine any existing property interests or change anything about Florida law. *Rogers V* affirmed this court's understanding of Florida precedents over the last century as holding that there is a presumption that a deed conveys fee simple title (or the greatest title the grantor could convey) but that the language of the deed controls. The Florida Supreme Court in no way redefined the meaning of a fee simple or an easement, nor did anything to change the governing principle that the grantor's intent controls. Nor does the Government's reading of it.

Third, Plaintiffs argue that *Rogers V* does not apply because unlike the deeds in *Rogers V*, the deeds here are "voluntary grants subject to Florida's voluntary conveyance statute." ECF No. 39 at 25. Plaintiffs rely upon Section 2241 of the Florida Statutes (1892) for the proposition that the conveyances made voluntary grants to the railroads for them to build their rail lines and, therefore, created only an easement. ECF No. 31-2 at 23-24; ECF No. 39 at 20, 24-25. Section 2241 provided that "the real estate received by voluntary grant shall be held and used for purposes of such grant only." ECF No. 31-2 at 23 (quoting Fla. Stat. § 2241 (1892)). Plaintiffs contend that because these deeds recite what they consider to be nominal consideration, they are voluntary grants. ECF No. 31-2 at 24-25. And, according to Plaintiffs, the parties in *Rogers V* did not allege that the conveyances were voluntary grants, making that case distinguishable from this one.

---

[4] *See also* Plaintiffs' Notice of Additional Authority, ECF No. 45 at 3 (urging the court and the Government to take heed of "the Supreme Court's decision in [*Tyler v. Hennepin County*, 598 U.S. 631 (2023)] . . . so that the government has opportunity to consider and address" the decision and "its effect upon the government's argument that the Florida Supreme Court's answer to the certified question in 2015 in *Rogers* somehow redefined the rule governing how this Court should interpret the interest a grantor intended to convey in property . . . in the early 1900s.").

Contrary to the Plaintiffs' argument, however, the plaintiffs in *Rogers V* (represented by the same counsel as Plaintiffs here) made this same argument to the Florida Supreme Court relying on the same cases that Plaintiffs rely upon here. *Compare* ECF No. 31-2 at 24-25 *with* Initial Br. Of Appellants at 10-13, *Rogers v. United* States, SC 14-1465 (Fla. 2014).[5] And the Florida Supreme Court expressly rejected this argument under Florida law. According to *Rogers V*, a voluntary grant or conveyance is "[a] conveyance made without valuable consideration." 184 So. 3d at 1094 (quoting *Black's Law Dictionary* 408 (10th ed. 2014)). As an example, '"[v]oluntary grants' of land to railroads might include land grants made by a state or local government or the federal government. Other grantors might donate land to railroads in the hope of benefiting from the location of the railroad tracks or a station." *Id.* at 1094 n.3. But the Florida Supreme Court expressly rejected the argument that nominal consideration indicated a conveyance was a voluntary grant:

> Appellants also cite *Ogg v. Mediacom LLC*, 142 S.W.3d 801 (Mo. Ct. App. 2004), where a Missouri court found nominal consideration to be a factor in discerning the grantor's intent to convey an easement rather than fee simple title. The law of Florida, however, is that the amount of consideration stated in a deed provides no basis for questioning the validity of the deed.

*Id.* at 1097 (citations omitted).

The deeds at issue here are, like in *Rogers V*, "grants by bargain and sale for valuable consideration." *Id.* at 1094. The amount of that consideration is irrelevant to the question of what the grantor conveyed to the railroad. Thus, because the deeds here recite valuable consideration, even if nominal, they are grants by bargain and sale and are not voluntary grants under Florida law.

**D. In Florida, railroad companies may hold fee simple title to land acquired for building railroads.**

Plaintiffs put forth a variety of arguments as to why the railroad companies could, as a matter of law, only have acquired an easement by these deeds. Each will be addressed in turn.

First, Plaintiffs assert that railroad corporations could only acquire easements when acquiring property to build a railroad line. ECF No. 31-2 at 21-23. They argue "a railroad corporation is a creature of state law and a railroad corporation's power and authority to acquire property, especially including property acquired through the exercise of eminent domain, is defined by the public purpose for which the railroad corporation was chartered." *Id.* at 23. And because railroad corporations only need an easement to accomplish their public purpose of operating a railroad, that is the only interest the railroads could have acquired in the deeds at issue. *Id.*

But this broad assertion finds no basis in Florida law. "Florida law recognizes that railroads may hold fee simple title to land acquired for the purpose of building railroad tracks."

---

[5] For the avoidance of doubt, this is the property owners' brief in *Rogers V*.

*Rogers V*, 184 So. 3d at 1095 (citing *Atl. Coast Line R.R. Co. v. Duval Cnty.*, 154 So. 331 (Fla. 1934); *Clark v. Cox*, 85 So. 173 (Fla. 1920); *Fla. Power Corp. v. McNeely*, 125 So. 2d 311 (Fla. Dist. Ct. App. 1960)). The fact that a railroad is a creature of state law does not prevent it from receiving fee simple title from a willing grantor. And the fact that railroad companies may have been able to accomplish their endeavors via easements is irrelevant to the question of what the grantors intended to convey in an unambiguous conveyance. *Rogers V*, 184 So. 3d at 1094-95.

Second, Plaintiffs argue that "[t]he strip and gore doctrine is a background principle of law that informs the interpretation of these conveyances. The common law has long disfavored the creation of fee estates in strips or gores of land used as rights of way." ECF No. 31-2 at 28. But, again, "under Florida state law, a railroad can acquire either an easement *or* fee simple title to a railroad right-of-way and . . . no statute, state policy, or factual considerations prevails over the language of the deeds when the language is clear." *Rogers IV*, 814 F.3d at 1309 (emphasis in original); *see also Rogers V*, 184 So. 3d at 1098. Thus, when the language is clear, the "'strips and gores' argument [is] inapplicable." *Rogers V*, 184 So. 3d at 1099.

Third, Plaintiffs "describe the development of the Sarasota area in the early 1900s, the Palmer family, and the construction of Seaboard Air Line Railway's railway line from Sarasota to Venice." ECF No. 39 at 3 (citing ECF No. 31-2 at 5-15). Here, they argue that "[t]his historical context demonstrates why (and the purpose for which) these landowners granted the railroad right-of-way easements across the owners' land." *Id*. But if the grantor's intent is unambiguous from language of deed, the court does not consider extrinsic evidence. *Rogers V*, 184 So. 3d at 1100. This is because Florida courts "[do] not endeavor to discover the intent of the parties based on circumstances allegedly surrounding the deed's enactment" but "determine the parties' intent from the express text of the Contract." *Rogers II*, 93 Fed. Cl. at 618 (internal quotation marks omitted) (quoting *Fin. Healthcare Assoc. v. Pub. Health Tr.*, 488 F. Supp. 2d 1231, 1239 (S.D. Fla. 2007)).

Therefore, Plaintiffs' arguments fail in this regard. Under Florida law, railroad companies may obtain fee simple title to land acquired for building railroads.

### E. The Deeds

With this understanding of Florida property law, the court turns to the deeds at issue in this case.

#### 1. Honore Conveyance

The court does not take it upon itself to interpret the Honore deed for two simple reasons. First, Judge Williams did a thorough and persuasive job of construing the Honore deed in *Rogers I*. *Rogers I*, 90 Fed. Cl. at 429-33. Second, and more importantly, the parties in this case have stipulated that the Honore deed conveyed only an easement that was not broad enough to include recreational trail use. ECF No. 19 at 1. The court includes the Honore deed for comparison to the disputed conveyances to show what language conveying an easement under Florida law looks like. The Honore deed states:

> KNOW ALL MEN BY THESE PRESENTS, That the undersigned, ADRIAN C. HONORE, a bachelor of Chicago,

> Illinois, for and in consideration of the sum of one dollar ($1.00) and other good and valuable considerations this day to him in hand paid, the receipt whereof is hereby acknowledged, does hereby remise, release, and forever quit claim unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, a right of way for railroad purposes over and across the following described parcels of land, lying and being in the County of Manatee, and State of Florida[.]
>
> * * * * *
>
> TO HAVE AND TO HOLD the said premises unto the said Seaboard Air Line Railway, its successors and assigns and to its or their proper use, benefit and behoof forever for railroad purposes.
>
> This conveyance is made upon the express condition, however, that if the Seaboard Air Line Railway shall not construct upon said land and commence the operation thereon with one year of the date hereof a line of railroad, or, if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the above described pieces and parcels of land shall ipso facto revert to and again become the property of the undersigned, his heirs, administrators and assigns.

ECF No. 1-1 at 2-4.[6] Note that the granting clause conveys only "a right of way for railroad purposes over and across" certain land, but it does not convey the land itself. Thus, it is not conveying land, only the right to pass over land. *Rogers I*, 90 Fed. Cl. at 429. Indeed, as another member of this court recognized, the most natural reading of the term "right of way" is that it conveys an easement. *Mills*, 147 Fed. Cl. at 346. And the granting clause contains an explicit limitation on the use the railroad could make of the right of way.

The second paragraph above reinforces the limited use for which the property is conveyed to the railroad. But most importantly for determining Mr. Honore's intent is the explicit reversion to his successors if the railroad ceased using the property *as a railway*. *Rogers I*, 90 Fed. Cl. at 429-31. In plain terms, the Honore deed provides that if the railroad stopped using the property for railroad purposes, the property would "revert to and again become the property of the undersigned, his heirs, administrators and assigns." ECF No. 1-1 at 4. In other words, the conveyance itself makes Mr. Honore's intent to transfer only an easement clear, which is dispositive of the issue.

2. Sarasota Land Company and Clough Conveyances

Because the operative language in the Sarasota Land Company and Clough conveyances is materially identical, as Plaintiffs acknowledge, ECF No. 31-2 at 39, the court examines them

---

[6] Because the exhibit containing the Honore deed is not consecutively paginated, the court cites to the pagination in the ECF Header.

together and quotes the Sarasota Land Company conveyance unless otherwise indicated.[7] The Plaintiffs argue that these conveyances[8] transferred only an easement to the railroad, while to Government contends they conveyed fee simple title to the railroads.

The court begins with the language of the conveyance:

> [F]or and in consideration of the sum of Five Dollars . . . and other valuable considerations, [the Sarasota Land Company] hereby grants, bargains, sells and conveys unto [the Seaboard Air Line Railway] all their right, title and interest, of any nature whatsoever in and to the following property*,* to wit:
>
> All those certain pieces or parcels of land lying and being in the County of Manatee . . . and being described as follows:
>
> A Strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across the lands owned by [Sarasota Land Company] . . . .
>
> * * * * *
>
> TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of the said portion of the first part in and to the same.

ECF No. 31-5.

The Sarasota Land Company and Clough conveyances unambiguously transferred fee simple title to the property they describe. First, in the granting clause, the grantor "grants, bargains, sells and conveys unto [the Seaboard Air Line Railway] *all their right, title and interest, of any nature whatsoever* in and to the following *property*." *Id*. (emphasis added). This broad conveyance of "all right, title, and interest of any nature whatsoever" clearly reflects an intent to convey fee simple. *Rogers II*, 93 Fed. Cl. at 619. And the grantors were conveying all their interest in land, further supporting that they were conveying the fee estate. Second, the

[7] The only differences in the two deeds are the grantors and the consideration. In the Sarasota Land Company conveyance, the Sarasota Land Company is the grantor, and the consideration is five dollars. ECF No. 31-5. In the Clough conveyance, the Cloughs are the grantors, and the consideration is fifty dollars. ECF No. 31-7. Because Florida does not consider the amount of consideration in determining the intent of the parties, the different consideration is not a material difference. *See Rogers V*, 184 So. 3d at 1097.

[8] The successors-in-interest to the Sarasota Land Company are Plaintiffs Deborah Barron, John Buenaventura Baez, James Achille, Jonathan Achille, the ALB Revocable Trust, the RPB Revocable Trust, Courtyard Villas, LLC, the Mallon Family Trust, Ronald Nourse, Old Forest Lakes Owners' Association, Gilda Pascual, Stephen Stiller, Christopher Wormwood, and Sharon Krueger. The successor-in-interest to Mr. and Mrs. Clough is Plaintiff James Musselwhite.

conveyances describe the property being conveyed as "[a]ll those certain pieces or parcels of land lying and being in the County of Manatee . . . and being described as follows: A Strip of land." ECF No. 31-5. This too indicates an intent to convey fee simple title because the grantor was transferring *land*—not an easement over the land. *Rogers II*, 93 Fed. Cl. at 619. The conveyance of all title to certain lands grants considerably more than the "right of way" that the Honore conveyance did. Indeed, the term "right of way" does not appear anywhere in these conveyances. Finally, unlike the Honore conveyance, the Sarasota Land Company and Clough conveyances do not include a reversionary clause or any limitation on the railroad's use of the property. Given the clear conveyance of "all right, title and interest," the lack of any reversionary clause is telling. *See Whispell Foreign Cars, Inc.*, 97 Fed. Cl. at 336; *Andrews*, 147 Fed. Cl. at 526. All of this indicates unambiguously that the grantors intended to convey the property in fee simple rather than merely an easement.

Plaintiffs' efforts to construe these deeds as conveying only an easement for railroad use are not persuasive and, in several cases, have been explicitly rejected by the Florida Supreme Court. First, Plaintiffs contend that because the conveyances conveyed a '"strip of land . . . on each side of the center line of the Seaboard Air Line Railway" this indicates the railroad had already entered the land and thus "memorialized the railroad's right-of-way easement in a strip of land across which the railway had already entered the land, surveyed and built a railroad line." ECF No. 31-2 at 38 (quoting ECF No. 31-5). Plaintiffs rely on *Preseault II* for this assertion, arguing that when "the instrument . . . describes the railway line as already and located across [the] property. . . . this means the railroad only acquired an easement, not title to the fee estate in land." ECF No. 39 at 20. While Plaintiffs acknowledge that *Preseault II* applied Vermont law, they argue that "[t]he principles of Vermont law in the early 1900s, upon which *Preseault II* relied are indistinguishable from Florida law in the early 1900s. Thus, the Federal Circuit's analysis in *Preseault II* directs this court to reach the same conclusion here." ECF No. 39 at 8.

Plaintiffs' reliance on *Preseault II* is misplaced. Vermont law is not Florida law—Montpelier does not govern Miami. Plaintiffs have pointed to nothing that supports their assertion that "[t]he principles of Vermont law in the early 1900s . . . are indistinguishable from Florida law in the early 1900s." ECF No. 39 at 8. At oral argument, Plaintiffs claimed that this assertion was supported by the fact that the Vermont Chief Justice, Justice Redfield's "treatise on railroad law . . . was cited a number of times in Florida Courts, the Florida Supreme Court in the early 1900s, for various points." ECF No. 48 at 16:9-13. But Florida courts merely citing to a treatise "for various points" is not enough to establish Florida courts have adopted Vermont law wholesale, or that Florida follows Vermont in limiting railroads to easements if they already occupy a parcel.

In fact, prior plaintiffs made this very same argument in *Rogers*, and this court rejected it. *Rogers II*, 93 Fed. Cl. at 623 (concluding that "*Preseault II* . . . was limited to a situation where a railroad exercised eminent domain under principles of Vermont law[, but when the railroad did not acquire land under eminent domain, Florida law considers] the terms of the deeds a[s] controlling and not the context in which the property was acquired."). And, most importantly, the Florida Supreme Court rejected it too:

> Appellants have not cited any source of statutory or decisional law applicable in Florida that supports their argument that a deed

> meeting all the formal requisites for passing fee simple title is rendered invalid or is limited in its effect by the fact that the grantee is already occupying the property. When a deed is unambiguous and sufficient on its face to show the grantor's intent as to the property described and the estate conveyed, extrinsic evidence is not admissible to vary the terms.

*Rogers V*, 184 So. 3d at 1100 (citing *Fla. Moss Prods. Co. v. City of Leesburg*, 112 So. 572 (Fla. 1927)) (additional citations omitted).

Second, Plaintiffs contend that both deeds acknowledge "that the land underlying the railway strip was 'owned' and retained by the grantor[s]." ECF No. 31-2 at 39. But Plaintiffs come to this interpretation by cherry-picking language out of context. The deed conveys "All those certain pieces or parcels of land . . . described as follows: A Strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across the lands owned by" Sarasota Land Company. ECF No. 31-5; *see also* ECF No. 31-7 ("A strip of land . . . on each side of the center line of the Seaboard Air Line railway as located across the lands owned by [the Cloughs] . . . ."). But the deeds clearly conveyed the "strip of land," and the reference to the lands owned by the SLC and the Cloughs simply locates the strip of land. This does not indicate in any way that the grantors were retaining ownership of the land under the railroad. Read in context, this language clearly is a description of where the conveyed land is, not the interest being conveyed.

Judge Williams's discussion of this argument in *Rogers II* applies equally here. In *Rogers II*, the plaintiffs argued that despite the unambiguous intent to convey fee simple title, the fact that a deed for a strip of land "through the lands of the grantor" meant that the conveyance was for only an easement. *Rogers II*, 93 Fed. Cl. at 621. But "[t]he language 'through the land of the grantor' in the deed merely describes the location of the strip of land conveyed to [the railroad] and does not define or characterize the nature of the property interest conveyed to [the railroad]." *Id.* Here too, Plaintiffs rely upon the language locating the property, not the property being conveyed.

Finally, Plaintiffs argue that the deeds should be construed against the railroad because the railroad drafted them. ECF No. 31-2 at 37-39. According to Plaintiffs, "the fact that the [SLC] conveyance's language is identical to the Clough deed demonstrates that the railroad drafted the deed and should be construed in favor of these landowners . . . . [and] the Clough deed should be construed against the railroad." *Id.* at 39. But under Florida law, "[r]ules of construction will be utilized only where the meaning or effect of the deed is doubtful." *Rogers V*, 184 So. 3d at 1095 (quoting *Saltzman*, 306 So. 2d at 539); *see also Heath v. First Nat'l Bank in Milton*, 213 So. 2d 883, 888 (Fla. Dist. Ct. App. 1968) ("Any . . . *ambiguities* in the language of the instrument must be construed more strongly against the drafter of such instrument." (emphasis added)); *Consol. Dev. & Eng'g Corp. v. Ortega Co.*, 158 So. 94, 96 (Fla. 1933) ("[B]ecause [the mortgage clauses] appear in an instrument which was prepared for the mortgagee's benefit, *any ambiguity in language* . . . must be construed most strongly against the mortgagee.") (emphasis added); *Sec. First Fed. Sav. & Loan Ass'n v. Jarchin*, 479 So. 2d 767, 770 (Fla. Dist. Ct. App. 1985) ("*Insofar as the language may be deemed ambiguous*, Florida law is clear that *any ambiguity* in contractual language will be interpreted against the party who

selected that language . . . ."); *Beres v. United States*, 97 Fed. Cl. 757, 803 (2011) ("[B]ecause this court concludes that the railroad . . . drew up the deeds, . . . any *ambiguity* in the . . . Deeds must be interpreted in the grantors' favor.") (emphasis added). Because the Sarasota Land Company and Clough conveyances contain no ambiguities, there is no basis to invoke this rule of construction when interpreting these deeds.

Because the Sarasota Land Company and Clough conveyances unambiguously conveyed fee simple title to the railroad, the NITU did not affect a taking of property held through these conveyances. *See Preseault II*, 100 F.3d at 1533.

3. The Burton Conveyance

The Burton conveyance[9] was executed on October 5, 1910, between Oscar and Alice Burton and the Seaboard Air Line Railway. ECF No. 31-6. The deed provides:

> [I]n consideration of the sum of Five Dollars . . . [the Burtons] do hereby grant, bargain, sell and convey unto [Seaboard Air Line Railway] the following property to-wit: A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across the lands owned by [the Burtons] . . . .
>
> Said Strip of land contains 6.2 acres, more or less. TOGETHER, with all and singular the tenements, hereditaments and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of [the Burtons] and to the same.
>
> TO HAVE AND TO HOLD the same unto [Seaboard Air Line Railway] its successors and assigns, to its or their own proper use, benefit and behoof, forever. And [Sarasota Land Company], for value received, doth hereby sell, transfer and assign unto [Seaboard Air Line Railway] all its right, title and interest in and to the aforesaid contract of sale[10] of . . . 1909 . . . .

*Id.*

The language of the Burton conveyance unambiguously conveys fee simple title. First, the deed is expansive and contains no limitations—it provides that the land is being conveyed to Seaboard Air Line Railway and its successor "to its or their own proper use, benefit and behoof, *forever*." *Id.* (emphasis added). The fact that the land is being transferred forever and for

[9] The successors-in-interest to Mr. and Mrs. Burton are Plaintiffs Willis Martin, Alta Martin, James Myers, and Katherine Myers.

[10] The deed provides that the Burtons contracted to sell certain land in Manatee County, Florida, to Frank S. Colton and Neville Bailey in 1909. ECF No. 31-6. Colton and Bailey in turn transferred all their right and interest in and to the contract of sale to the Sarasota Land Company. *Id.*

whatever proper uses shows an intent to transfer fee simple title.  Second, the conveyance describes the property being conveyed as "land"—specifically as "[a] *strip of land* one hundred (100) feet wide . . . . on each side of the center line of the Seaboard Air Line Railway as located across the lands owned by [the Burtons]."  *Id.* (emphasis added); *see Rogers II*, 93 Fed. Cl. at 619.  Again, grantors transferring "land" indicates an intent to transfer fee simple title.  Third and finally, unlike the Honore deed, there is no reference to a right of way, no reversionary clause, nor any indication that the Burtons retained any interest in the property.  Thus, everything in the conveyance establishes that the Burton conveyance intended to convey a fee simple interest to Seaboard Air Line Railway.

For the Burton conveyance, Plaintiffs reiterate previous arguments that the deed conveyed an easement because it "conveyed only a strip of land for a railway already existing on the land of the grantor" and that "courts should construe any ambiguity in the deed if [sic]favor of the landowner."  ECF No. 31-2 at 36-37.  As explained above, these arguments are not viable under Florida law.  *See supra* Section III.E.2.  Plaintiffs again assert the deed "acknowledged that the land underlying the railway strip was 'owned' and retained by the grantors."  ECF No. 31-2 at 36.  But nowhere in the deed does it state that the land underlying the railroad strip was retained by the grantors.  When the Burton conveyance describes the land "as located across the lands owned by" the Burtons, it is in the context of describing what land is being conveyed—like in the Sarasota Land Company and Clough conveyances; it is not expressing that the Burtons would maintain ownership of the underlying land.  *Rogers II*, 93 Fed. Cl. at 621 ("The language 'through the lands of the grantor' in the deed merely describes the location of the strip of land conveyed to [the railroad] and does not define or characterize the nature of the property interest conveyed to [the railroad].").  *Rogers III* clarified that "other language in the Honore conveyance—the phrases 'a right of way' and 'for railroad purposes'—as well as 'over and across . . . the parcels of land,' reflected the grantor's intent to convey an easement."  *Rogers III*, 107 Fed. Cl. at 396 (citing *Rogers I*, 90 Fed. Cl. at 429-31).  And "[t]he word 'across,' in conjunction with the words 'as located,' merely describes the location of the subject parcel and does not qualify or limit the property interest the grantors conveyed."  *Id.*  So too in this case.

Plaintiffs next argue that "[u]nless the parties make clear in the deed they intended creation of a fee simple estate . . . the most convincing conclusion is that they intended an easement."  ECF No. 31-2 at 36-37.  Not so.  Under Florida law, there is no presumption that a deed conveys an easement.  To the contrary, Florida law presumes exactly the opposite under Section 689.10 of the Florida Statutes.  In Florida, absent a contrary intention, "a deed is presumed to convey fee simple title."  *Rogers V*, 184 So. 3d at 1095 n.5.  In other words, Plaintiffs' argument flips Florida law on its head.

Similarly unavailing is Plaintiffs' contention that the "limitation to railroad purposes is implicit in the deed, evidencing that the parties intended the grant of only an easement."  ECF No. 31-2 at 36.  According to Plaintiffs, because the deed conveys "a strip of land," this means it "is most likely for the creation of a corridor for the passage of trains," and further, "a conveyance of a strip of land 'across' the property. . . denotes . . . a right of passage over the land."  *Id.* at 37 (citing Restatement (Third) of Property: Servitudes § 2.2).  Again, Plaintiffs have jumped the tracks.  The term "strip of land" in the granting clause of a deed indicates the parties "intended to convey land, rather than a right to use or control land for a limited purpose."  *Rogers II*, 93 Fed. Cl. at 619 (citing A.E. Korpela, *Deed to railroad company as conveying fee or easement*, 6

A.L.R.3d 973, § 4); *see also Whispell Foreign Cars, Inc.*, 97 Fed. Cl. at 335-37; *Andrews*, 147 Fed. Cl. at 526. Plaintiffs' argument fails because it is premised on assumptions and presumptions about what the grantors intended to convey despite the language of the deed, which Florida law does not allow the court to do.

Because the Burton conveyance unambiguously conveyed fee simple title to the railroad, the NITU did not affect a taking of property held through these conveyances. *See Preseault I*, 494 U.S. at 16.

4. The Neihardt Conveyance

In January 1905, Moses Neihardt[11] conveyed property to the railroad. The Neihardt conveyance provides that:

> [F]or and in consideration of the sum of One Dollars [sic] . . . paid by [the Florida West Shore Railway] . . . [Mr. Neihardt] has granted, bargained and sold to [the Florida West Shore Railway], its successors and assigns forever, the following-described land, to wit: . . . [description of the metes and bounds of the land conveyed] . . . . And [Mr. Neihardt] does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

ECF No. 31-8.

The text of the Neihardt conveyance demonstrates that Mr. Neihardt unambiguously conveyed fee simple title to the railroad. First, the granting clause is expansive and contains no limiting language—it provides that Mr. Neihardt "has *granted, bargained and sold* to [the Florida West Shore Railway], its successors and assigns *forever*, the following-described *land*." ECF No. 31-8 (emphasis added); *see Whispell Foreign Cars, Inc.*, 97 Fed. Cl. at 335 (holding that a deed conveyed fee simple title in part because it "granted, conveyed, bargained and sold" its interest). Second, the conveyance describes the land conveyed as "the following described *land*." ECF No. 31-8 (emphasis added). Again, this indicates that Mr. Neihardt was selling land, not the right to access land. *Rogers II*, 93 Fed. Cl. at 619; *see also Andrews*, 147 Fed. Cl. at 526. Third, unlike the Honore conveyance, there is no mention of a right of way or a reversionary clause, which further supports the conclusion that Mr. Neihardt was conveying fee simple rather than an easement. Fourth and finally, the conveyance contains a warranty clause—another factor in favor of concluding that Mr. Neihardt sought to convey fee simple title rather than an easement. *Rogers II*, 93 Fed. Cl. at 619-20; *Whispell Foreign Cars, Inc.*, 97 Fed. Cl. at 337-39.

Plaintiffs' arguments to the contrary are not persuasive. They assert "[t]he form deed's generic and non-descriptive language does not demonstrate that any title was conveyed to the railroad beyond an easement" and "[u]nless the parties made clear in the deed that they intended creation of a fee simple estate in an otherwise unusable strip of land, the most convincing

[11] The successors-in-interest of Mr. Neihardt are Plaintiffs Enos Weaver, Jr. and Anna Mary Weaver.

conclusion is that they intended an easement." ECF No. 31-2 at 40. Not so. The deed states clearly that Mr. Neihardt "granted, bargained and sold . . . *land*" to the railroad. ECF No. 31-8 (emphasis added). And it would make little sense for Mr. Neihardt to fully warrant the title to the land if the railroad was not acquiring title to the land. *Id.* (provision stating that Neihardt "fully warrant[ed] the title to said *land*") (emphasis added); *see also Rogers II*, 93 Fed. Cl. at 619-20; *Whispell Foreign Cars, Inc.*, 97 Fed. Cl. at 337-39. This warranty clause clearly indicates a transfer of fee simple. Further, under Florida law "a deed is presumed to convey fee simple title, or whatever title the grantor had power to convey, unless a contrary intention is shown by the language of the deed." *Rogers V*, 184 So. 3d at 1095 n.5 (citing Fla. Stat. § 689.10). Again, Plaintiffs are attempting to turn Florida law on its head.

Plaintiffs also contend that Mr. Neihardt conveyed an easement because "[t]he conveyance recites only one dollar of consideration, and the strip of land is a fifty-foot-by-sixty-foot strip of land." ECF No. 39 at 21. But under Florida law, the amount of consideration is irrelevant to determining whether a deed conveys an estate in fee or an easement. *Rogers V,* 184 So. 3d at 1097. Plaintiffs further question, "[w]hy would Moses Neihardt, a Missouri widower, intend to convey the railroad title to the land? And why would the railroad desire any greater interest in this fifty-by-sixty-foot strip of land than an easement?" ECF No. 39 at 22. But this conjecture is also irrelevant. "When interpreting a deed under Florida law, '[t]he Court's function in interpreting and enforcing a contract is to determine the parties' intent *from the express text of the Contract*.'" *Rogers III*, 107 Fed. Cl. at 394 (quoting *Fin. Healthcare Assocs.*, 488 F. Supp. 2d at 1239) (emphasis added).

Because the Neihardt deed unambiguously conveyed fee simple title to the railroad, the NITU did not affect a taking of property held through these conveyances. *Preseault I*, 494 U.S. at 16.

### F. The Condemnation Judgment

In the 1920's the Tampa Southern Railroad Company sought to condemn property held by Bonnie Tankersly and Mattie Davis, which resulted in a district court condemnation judgment. Plaintiffs argue the 1926 condemnation judgment granted "an easement for railroad purposes over and across the land now owned by Jane Shumway." ECF No. 31-2 at 32. The Government contends that the condemnation granted the railroad fee simple title to the covered property. ECF No. 32 at 13. The condemnation judgment provides:

> That the property sought to be condemned is described as follows:-
>
> All that certain piece, parcel or strip of land situate, lying and being in the Southwest Quarter . . . particularly described as follows:
>
> [The judgment describes the metes and bounds of the land.]
>
> That the compensation made therefor shall be the sum of $61,500 Dollars . . . .

> That the amount of said compensation shall be paid to Bonnie K. Tankersley and Mattie V. Davies . . . .
>
> It is considered by the Court that the property therein described be appropriated by the Tampa Southern Railroad Company for use as a right of way for said Railroad Company, upon the petitioner paying . . . the compensation . . . .

ECF No. 31-9 at 7-8.

Plaintiffs are steadfast that the railroad could only acquire an easement through the condemnation proceeding. But Florida precedent is clear that railroad companies can acquire fee simple title by condemnation. In *Atlantic Coast Line*, the Florida Supreme Court explained: "A railroad right of way in this state is not a mere easement or user for railroad purposes. Like other property it is acquired by purchase *or condemnation* and vests a fee in the company acquiring it which cannot be divested except as the law provides." 154 So. at 332 (emphasis added). This 1934 decision, which is almost contemporaneous with the 1926 judgment here, makes clear that railroads *could* acquire fee simple title through condemnation.[12] Likewise, while analyzing instruments from the late 1800s and early 1900s, this court concluded that "under Florida statutes applicable at the time, a railroad *could* acquire and hold fee simple title in property by either purchase *or condemnation*." *Mills*, 147 Fed. Cl. at 347 (emphasis added).

Plaintiffs next argue that because the railroad could operate with only an easement, that is all it could acquire through the condemnation action. Specifically, Plaintiffs argue that "under Florida law, the railroad could only acquire an easement for railroad purposes when it condemned the land." ECF No. 31-2 at 36. As Plaintiffs contend, "Florida adopted the principle that, '[a] condemning authority exercising the power of eminent domain is not permitted to acquire a greater quantity of property or interest therein than is necessary to serve the public purpose for which the property is acquired.'" *Id.* at 35 (quoting *Trailer Ranch, Inc. v. City of Pompano Beach*, 500 So. 2d 503, 507 (Fla. 1986)). While this eminent domain limiting presumption exists, it does not mean that railroads could, as a matter of law, only acquire easements when acquiring land by eminent domain. Florida caselaw rejects this. *Atl. Coast Line R.R. Co.*, 154 So. at 332. Again, under Florida law, a railroad may acquire fee simple by condemnation so long as it is necessary to accomplish the public purpose for which the property is acquired. And "when the law says that private property may be taken for public use only when it is necessary for such use, it means a reasonable, not an absolute necessity." *Wilton v. St. Johns Cnty.*, 123 So. 527, 535 (Fla. 1929).

---

[12] The court does not understand this statement to be an absolute statement that all rights of way are considered fee simple estates under Florida law. Rather, as Judge Williams explained in *Rogers I*, the statement in *Atlantic Coast Line* was made in a case where the parties agreed that the railroad owned the right of way in fee. 90 Fed. Cl. at 430. Indeed "longstanding precedent" in Florida also makes clear that railroads could hold a right of way as easements. *Id.* (collecting cases). But this language does confirm that railroads could obtain fee simple title through condemnation.

The next question is how to interpret the condemnation judgment.  In *Rogers V*, the Florida Supreme Court did not address this issue because there were no condemnation judgments at issue in that case.  *Rogers V*, 184 So. 3d at 1096.  Other Florida courts, however, have held that "[t]he legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the Court."  *Boynton v. Canal Auth.*, 311 So. 2d 412, 415 (Fla. Dist. Ct. App. 1975); *see also Morris v. Winbar LLC*, 273 So. 3d 176, 179 (Fla. Dist. Ct. App. 2019) (same).  And "[i]f the language used in a judgment is ambiguous then it may be construed, but if the language employed is plain and unambiguous there is no room for construction nor interpretation, and the effect thereof must be determined in the light of the literal meaning of the language used."  *Boynton*, 311 So. 2d at 415.

The language of the condemnation judgment is ambiguous as to the title being taken.  On one hand, the condemnation judgment's language is expansive and describes the property condemned as land, specifically as "[a]ll that certain piece, parcel or strip of land."  ECF No. 31-9 at 7.  This language is almost the same as seen in the conveyances discussed above, indicating a transfer of the fee estate.  *See Rogers I*, 90 Fed. Cl. at 429-31; *Rogers II*, 93 Fed. Cl. at 619.  And while the judgment states the property was "appropriated by the Tampa Southern Railroad Company for use as a right of way for said railroad company," ECF No. 31-9 at 8, there is no limiting language restricting the use of the right of way to railroad purposes.  In *Rogers V*, the Florida Supreme Court stated that when discerning the intent of a deed, the inclusion of a purpose for the transaction, without more, does not indicate an intent to convey only an easement.  *Rogers V*, 184 So. 3d at 1095.  Finally, there is no reversionary language.

On the other hand, Plaintiffs argue the judgment conveyed an easement because "[i]t is well settled that the grant of a right of way is usually understood to constitute an easement."  ECF No. 31-2 at 33.  Plaintiffs rely on *Nerbonne, N.V. v. Florida Power Corp.*, 692 So. 2d 928, 928 n.1 (Fla. Dist. Ct. App. 1997), for the proposition that "[t]he conveyance of a right-of-way is generally held to create only an easement.  ECF No. 31-2 at 33.  Similarly, as Judge Bruggink explained: "We think the better view is that a 'right-of-way' for railroad purposes should be construed according to its natural meaning, i.e. '[t]he right to pass through property owned by another.'" *Mills*, 147 Fed. Cl. at 347 (quoting *Right-of-Way*, Black's Law Dictionary (11th ed. 2019)).

*Mills* and *Nerbonne* are also distinguishable.  In *Mills*, "there was no reference . . . to . . . anything that might look like a fee estate."  *Id*.  This judgment, however, has language that indicates it conveys fee simple (i.e. the taking of land).  And as discussed above, under Florida law "right of way" language alone is not determinative— "the term right-of-way . . . can refer either to . . . an easement—or . . . an estate in fee.  Whether the railroad obtains a 'right' or 'land' depends on the [parties'] intent . . . ."  *Rogers II*, 93 Fed. Cl. at 623 (internal citation omitted) (quoting 43 Fla. Jur. 2d, Railroads § 32); *see also Rogers V*, 184 So. 3d at 1094-95.

*Nerbonne* concerned the grant of a permit, not a condemnation action.  *Nerbonne*, 692 So. 2d at 928.  Moreover, the condemnation judgment here clearly conveyed "[a]ll that certain piece, parcel or strip of land[,]" ECF No. 31-9 at 7, while in *Nerbonne* the conveyance granted "a right-of-way for public road purposes and full authority to enter upon, construct and operate a road over and upon the following described lands situate in Orange County."  *Nerbonne*, 692 So. 2d at 928.  The judgment here, however, concerns the "property" rather than the right to operate

a railroad over it. *See* ECF No. 31-9 at 7. And the habendum clause in *Nerbonne* read "TO HAVE AND TO HOLD the said easement or right-of-way unto the party of the second part and its successors for the purpose aforesaid." *Nerbonne*, 692 So. 2d at 928. There is no such limitation in the condemnation judgment here.

Again, Florida courts are clear that the "effect of a judgment must be ascertained by a construction and interpretation of its terms" and if unambiguous, the judgment "must be determined in the light of the literal meaning of the language used." *Boynton*, 311 So. 2d at 415. Because the decree's language is ambiguous, however, the court may look to extrinsic evidence to interpret the terms of the decree. *See Rogers II*, 93 Fed. Cl. at 625 ("Florida courts have [ ] admitted separate and contemporaneous deeds or instruments in order to discern the real intent of an otherwise ambiguous instrument."); *Boynton*, 311 So. 2d at 415 ("In cases of ambiguity or doubt the meaning of the judgment must be determined by that which preceded it and that which it was intended to execute. If a judgment cannot be interpreted from the language in the judgment itself, the entire record may be examined and considered . . . ."). But the court must not allow extrinsic evidence to change the terms of the judgment. *E.g.*, *Rogers II*, 93 Fed. Cl. at 625) ("[E]xtrinsic evidence is allowable to the extent it 'removes' or clarifies the ambiguity, but it may not be used to 'vary, alter, or contradict a written instrument.'") (quoting *Whitfield v. Webb*, 131 So. 786, 788 (Fla. 1931)); *Boynton*, 311 So. 2d at 415 (when considering the extrinsic evidence, "the adjudication should not extend beyond that which the language used fairly warrants, since the purpose and function of construction is to give effect to that which is already latent in the judgment").

To address the ambiguity, the court finds it appropriate to consider filings made in the 1926 action[13] that Plaintiffs filed in this case to see what light they shed on the proper interpretation of the judgment. *Boynton*, 311 So. 2d at 415 (allowing the court to review the record of the condemnation proceeding to interpret the judgment). Because neither party sufficiently briefed this issue, the court ordered "supplemental briefing on the issue of what interest in property the railroad acquired by the 1926 condemnation judgment." ECF No. 52. The Government believes this evidence supports its position that the judgment transferred fee simple to the railroad. ECF No. 55 at 2. Plaintiffs believe that the record shows the railroad got only an easement. ECF No. 56 at 12. But both parties agree that it is appropriate for the court to consider the filings in the district court action to construe ambiguities in the terms of the condemnation judgment. ECF No. 55 at 2; ECF No. 58 at 1.

As a starting point, the court looks at each party's proposed jury instructions to understand what the parties were asking the jury to do in the condemnation action. The railroad's proposed instruction reads:

> The jury are instructed that, in considering the compensation to be paid to the defendant for the land about to be taken, they are to fix the actual cash market value of the land taken. And they are further instructed that they are not to consider the price at which

[13] The court recognizes that this judgment is 98 years old and the record available to the court is limited. Plaintiffs have filed all the records they could locate from the 1926 docket. ECF No. 56 at 6 n.7.

> the property would sell for under special or extra-ordinary circumstances, but its fair market value, if sold in the market under ordinary circumstances for cash, and not on time, and assuming that the owners are willing to sell and the purchaser is willing to buy . . . .
>
> * * * * *
>
> Market value is the amount the strip would sell for if put upon the open market, and sold in the manner in which property is ordinarily sold for cash in the community where it is situated, with a reasonable time being given to find a purchaser and make the sale.

ECF No. 31-9 at 25-26. And the property owners' proposed jury instruction reads:

> In fixing the compensation to be paid the owners for the land sought to be taken it is proper for you to determine whether or not the proposed appropriation imposes an injury or impairment of value to the adjoining land of Defendants of the same tract from which this land is taken and in fixing the amount of compensation to be awarded by you[,] you should include the amount of such injury if any there be in your award.

*Id*. at 29.

At the outset the court acknowledges that it is not clear which of these proposed instructions was given, if it was a combination of the two, or something else entirely. But the court does consider these proposed instructions relevant in discerning what the parties thought the condemnation judgment would do. Both instructions charge the jury with considering what the *land* would sell for if put on the open market. They do not instruct the jury to determine the value of a right of way for railroad use or a sale of an easement in the land. And both refer to the property at issue as the "*land* about to be taken," *id.* at 25 (emphasis added), or the "*land* sought to be taken," *id.* at 29 (emphasis added). As the property owners put it, "it is proper for you to determine whether or not the proposed appropriation imposes an injury or impairment of value to the adjoining land of Defendants of the same tract *from which this land is taken* . . . ." *Id.* (emphasis added). Because the taking of an easement would not remove land from the landowners' tract, this statement indicates that the landowners thought that the property the railroad was condemning would be taken from the land that they would retain. This indicates that the condemnation action would result in the taking of property, not an easement to use that property.

Another document found in the district court records is an agreement by the parties delineating the land to be condemned, which also indicates that they understood that the district court was condemning the fee simple estate:

> It is agreed that the area of the land sought to be taken in this proceeding and shown in and on the map filed . . . as plaintiffs Exhibit No. 2 is as follows:-
>
> From the East extremity . . . to the line marked "B" is (1.74) . . . acres. From the line on the area in red marked "B" to the line marked "A" is (2.01) . . . acres and from the said line marked A to the North end of the area marked in red is (5.23) . . . acres.
>
> And that the triangular tract in the South . . . is approximately 5 acres.

ECF No. 31-9 at 43. This document—signed by both parties—indicates that what was being taken was *land* rather than an easement.

While Plaintiffs spend much of their supplemental briefs discussing historical background and rehashing arguments that a railroad may not acquire fee simple by condemnation, Plaintiffs also assert that the condemnation proceedings indicate the court condemned the property as an easement. ECF No. 58 at 3-4. Plaintiffs emphasize the use of right of way language in the condemnation petition, the show cause order, the property owners' answer, and the condemnation judgment. ECF No. 56 at 9-10. They argue "[i]t is manifest in these condemnation pleadings that everyone concerned, the railroad, the owners and the court, all referred to the railroad's interest as a 'right-of-way' for the specific 'purpose' of constructing and operating a railway line." *Id.* at 28.

It is true that some of the condemnation proceeding documents use right-of-way language. The Petition to Condemn the property states: "Petitioner further says it is authorized, under the laws of the State of Florida, to take and condemn real estate *for purposes necessary for its use as a railroad*." ECF No. 31-9 at 38 (emphasis added). And "Petitioner further shows unto the Court that the taking of the said property by your petitioner is *for the purpose of its use as a right of way for the construction of its railroad*, and that the said property is necessary for that purpose." *Id.* at 40 (emphasis added). The Show Cause Order instructs parties to appear "and to show cause why said property should not be *taken for the uses and purposes set forth in the petition* filed by the Tampa Southern Railroad Company." *Id.* at 24 (emphasis added). The property owners' answer also uses right of way language, but unlike the other documents this language does not describe the land being condemned as a right of way. *See id.* at 32-34. Regardless, all this right of way language must be viewed in context of the condemnation proceeding.

In *Rogers V*, the Florida Supreme Court explained that in the 1920s, Section 4354 in the Revised General Statutes of Florida (1920) applied. 184 So. 3d at 1092-93. This statute provided:

> Every railroad and canal company shall be empowered
>
> * * * * *

> [t]o lay out its road or canal . . . and to construct the same, and, for the purpose of cuttings and embankments and for obtaining gravel and other material, *to take as much land as may be necessary for the proper construction, operation and security of the road* or canal, or to cut down any trees that may be in danger of falling on the road or into the canal, *making compensation therefor as provided for land taken for the use of the company*.

*Id.* (citation omitted) (emphasis added).  Section 4354 accordingly applied at the time of the 1926 condemnation.  Thus, to exercise eminent domain power and effectuate a taking, the railroad would have had to prove that it was seeking "to take . . . land . . . necessary for the proper construction, operation and security of the road."  *Id.*  Indeed, under Florida law "where the statute conferring the authority, or the statute on the subject of eminent domain, limit the taking to such property as may be necessary for the purpose in question, whether any necessity exists for taking particular property for a particular purpose is ultimately a judicial question, upon which the owner is entitled to be heard."  *Wilton*, 123 So. at 535.  The railroad would, therefore, have had to show it was seeking to condemn the land for the purpose of construction and use of a railroad.  And if the railroad was not seeking to condemn for such a purpose or did not include such purpose in its petition, the taking could be challenged by the landowner.  *See Spafford v. Brevard Cnty.*, 110 So. 451, 455 (Fla. 1926) ("[W]here the sovereign power is delegated with limitations or conditions upon the exercise of the right of eminent domain, the owner of property sought to be taken under such delegated authority has a right to be heard in an appropriate tribunal upon the question of whether delegated authority is being duly exercised in taking his property.").

In this case, there was a challenge to the condemnation because the landowners argued that it was not for railroad purposes.  In their answer, the property owners argued the railroad "seeks in and by said petition to condemn certain land in said petition particularly described, *which is not essential for the construction of its line of railroad* . . . but beyond the destiny and termination of its purposes and authority and its power to extend and proceed with its said road." ECF No. 31-9 at 33 (emphasis added).  Accordingly, the right of way language in the condemnation documents does not conclusively show an intent to condemn only an easement.  Rather, it is likely that the railroad was merely complying with Florida law by asserting that it was seeking to condemn the land for a proper purpose, and to defeat the potential challenge by the landowners.  Therefore, the court does not believe the fact that the railroad sought "to take and condemn real estate for purposes necessary for its use as a railroad" necessarily means that the railroad sought only an easement.  *See* ECF No. 31-9 at 38.  If the court construed the language stating the purpose of the condemnation was to construct a railroad conclusively meant that a railroad sought an easement, it would appear impossible that a railroad could obtain a fee simple estate through condemnation under a statute that requires the condemnation to be necessary to the operation of a railroad.  But, as explained above, Florida law recognizes the railroad's ability to obtain a fee simple estate through condemnation.

Plaintiffs also claim that "[n]o Florida court presented with language similar to the condemnation pleadings . . . has concluded a railroad acquired title to the fee estate in a strip of land." ECF No. 56 at 35.  And they assert "should this Court believe Florida law is ambiguous or unsettled as to whether the 1926 condemnation verdict actually granted title to the fee simple

estate . . . this Court should certify this question to the Supreme Court of Florida." *Id.* It does not seem like a disputed proposition that a condemnation judgment should be interpreted like a deed insofar as the court must look to the language of the judgment to ascertain the nature of the estate conveyed. *Boynton*, 311 So. 2d at 415. That is what this court has done and that is what the court believes Florida law requires.

Regardless, Plaintiffs' requested certification is not possible. Although they cite the Florida Constitution as a means by which this court may certify a question to the Florida Supreme Court, ECF No. 56 at 2, they fail to address the language of that document. Instead, they rely on a prior decision of this court certifying a question to the Indiana Supreme Court under Indiana law. *Id*. at 38-39. Of course, the question is one of Florida law, not Indiana law. And the Florida Constitution provides that the Florida Supreme Court "[m]ay review a question of law *certified by the Supreme Court of the United States or a United States Court of Appeals* which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Fla. Const. art. V, § 3(b)(6) (emphasis added). And the Florida rules specify "[o]n either its own motion or that of a party, the *Supreme Court of the United States or a United States court of appeals* may certify . . . questions of law to the Supreme Court of Florida if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida." Fla. R. App. P. 9.150(a) (emphasis added). This court is undeniably not the Supreme Court of the United States nor a United States Court of Appeals. Thus, under Florida law, this court may not certify a question of law to the Florida Supreme Court even if this court thought it appropriate. If Plaintiffs want a question certified to the Florida Supreme Court, they must convince the Federal Circuit to do so.

Finally, in their supplemental briefing, Plaintiffs contend that the condemnation judgment only created an easement because Tankersley and Davis continued to hold their property and wound up before the Florida Supreme Court regarding who held title to the land. ECF No. 56 at 35. Before turning to the specific legal arguments, a review of the history of the conveyances to Tankersley and Davis is necessary.

J.C. Bishop owned a parcel of land in fee simple that included the land at issue in the condemnation action. *Tankersley v. Davis*, 175 So. 501, 502 (Fla. 1937). He was the father of Tankersley and Davis. On March 14, 1924, Bishop conveyed a life estate in part of his land to Tankersley with fee going to her children. *Id.* at 502-03. If Tankersley died without a child, however, Davis would inherit the life estate and her children would get fee simple title to the property. *Id.* If Davis had no living children, then fee would pass to Davis's heirs. *Id.* at 503. At the same time, Bishop conveyed a life estate in another part of his land to Davis with fee going to her children. *Id.* In the event Davis died without children, Tankersley would get a life estate with fee going to her children. *Id.* If she died without children, then fee would pass to her heirs. *Id.* At some point between conveying the property interests and the filing of the condemnation action, Bishop died, leaving Tankersley and Davis as the only ones holding a present interest in the land that the railroad sought to condemn. The district court entered its condemnation decree at issue in this case in 1926. Tankersley died in 1927. Sorting out the various property interests in Bishop's property resulted in litigation before the Florida Supreme Court, which concluded that Davis owned fee simple title to the property conveyed by her father. *Id*. at 505.

Plaintiffs assert that the fact that the Florida Supreme Court determined that Davis held fee simple title to the parcels conveyed by her father means that the railroad could only have held an easement burdening that property. ECF No. 56 at 4-6. This argument, however, presumes that the railroad sought to condemn the entirety of both parcels that Bishop conveyed to Tankersley and Davis. But that is clearly not what the condemnation sought to do. Although the court does not have before it the metes and bounds of the various Bishop parcels, Tankersley and Davis clearly understood that the railroad was not seeking to take all their property. Indeed, their proposed jury instruction recognized that they would retain their interests in the "adjoining land of Defendants of the same tract from which this land is taken." ECF No. 31-9 at 29. In other words, the property at issue in *Tankersley* was not the same property at issue in the condemnation action, it was the "adjoining land" that remained after the district court removed the property from the Tankersley and Davis parcels. Indeed, the Florida Supreme Court makes no reference to any encumbrance on either parcel at issue in *Tankersley*. Given the significant length at which the Florida Supreme Court traced all the relevant property interests and various estates that different parties held in the property, the failure to mention any interest of the railroad indicates that there was no such encumbrance (i.e., there was no easement over the property that Davis held in fee simple).

In the end, although the district court judgment is ambiguous as to the estate being condemned, the review of the record before the district court demonstrates that the parties understood that fee simple title was being taken. Therefore, the court concludes that the condemnation judgment affected the taking of fee simple title and there was no reversionary interest that would have reverted to Plaintiffs but for the NITU. Therefore, there was no taking of their property.

**G. Motion to Sever Claims**

Plaintiffs also requested this court "under Rule 20 and for the effective administration of justice, to sever the [three] claims" arising out of the Honore deed, ECF No. 20 at 1, as well as "order that these owners' claims proceed to a final determination of the specific compensation due each owner," *id.* at 14. The Government opposed the motion "because severing the three claims for which the Government has stipulated to liability (the "Honoré Properties") would be inefficient and costly" and it explained "[i]f and when Plaintiffs' counsel make a settlement offer" concerning these claims "undersigned counsel will review the offer and respond accordingly." ECF No. 22 at 1.

RCFC 21 sets forth that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." It is within the court's discretion to sever a claim and RCFC 20 provides guidance in determining whether parties or claims are misjoined. *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 938 (Fed. Cir. 2013); *see also* RCFC 20(a)(1) ("Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."). At this stage, severance of any claims is futile. The Honore claims are the only claims that survive the motion for summary judgment and therefore there are no other claims from which to sever them. Given this, Plaintiffs' motion to sever the Honore claims is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment, ECF No. 31, is **DENIED**. The Government's Cross-Motion for Partial Summary Judgment, ECF No. 32, is **GRANTED**. Plaintiffs' Motion to sever the Honore claims, ECF No. 20, is **DENIED**.

The Clerk's Office is directed to:

1. Enter judgment for the Government on the claims of the successors-in-interest of the Sarasota Land Company: Deborah Barron; John Buenaventura Baez; James Achille; Jonathan Achille; the ALB Revocable Trust; the RPB Revocable Trust; Courtyard Villas, LLC; the Mallon Family Trust; Ronald Nourse; Old Forest Lakes Owners' Association; Gilda Pascual; Stephen Stiller; Christopher Wormwood; and Sharon Krueger.

2. Enter judgment for the Government on the claim of the successor-in-interest of Mr. Clough: James Musselwhite.

3. Enter judgment for the Government on the claims of the successors-in-interest of Mr. Neihardt: Enos Weaver, Jr. and Anna Mary Weaver.

4. Enter judgment for the Government on the claims of the successors-in-interest of Mr. and Mrs. Burton: Willis Martin, Alta Martin, James Myers, and Katherine Myers.

5. Enter judgment for the Government on the claims of the successor-in-interest of Ms. Tankersley and Ms. Davis: Jane Shumway.

Pursuant to Rule 54(b), the court determines that there is no just reason for delay entering judgment for the Government as to the claims of the Plaintiffs listed above.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge